## C. W. HENDERSON Co. v. SOUTHERN RY. Co.

Eastern Section.   November 13, 1926.

No petition for Certiorari was filed.

1. **Railroads. Salvage. Railway company may salvage perishable freight in immediate danger of total loss or material injury.**
   Railway company may salvage perishable freight when in immediate danger of loss, but it must, if possible, or at all practicable, first notify the shipper and a failure to do so makes the company liable for the market value of the property appropriated.

2. **Railroads. Salvage. Evidence. Held that railroad improperly salvaged freight.**
   In an action to recover the value of a carload of beans which were salvaged by a railroad company in transit, where the evidence showed that the beans had been hot, but they were not salvaged until within a half day of the time that they could have been delivered at their destination and that the company did not first notify the owner although it could have done so, held the beans were improperly salvaged and the owner was entitled to recover the market value of the same.

Appeal from Chancery Court of Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed.

Green and Webb, of Knoxville, for plaintiff in error.

Cates, Smith, & Tate Long, of Knoxville, for defendant in error.

PORTRUM, J. W. C. Henderson Company filed this bill against the Southern Railway, a connecting carrier, to recover the value of a carload of beans alleged to have been converted by the company in the city of Atlanta, the value of the beans being placed at $2900. The Railway Company filed a cross-bill, seeking to recover from the complainant the freight charges on the said car from the point of origination to Atlanta, for the sum of $324.

The Chancellor granted a recovery in favor of complainant against the Railway Company for the sum of $600, which represented the value of the beans in their then damaged condition upon the Knoxville market, upon the theory that the Railway Company had no right to salvage the beans in Atlanta and was responsible for the value of the beans at that time. He also granted a recovery in favor of the Railway Company on the cross-bill for the amount of the freight sued for. From the decree both parties have appealed and assigned errors; the complainant insisting that the injury to the beans occurred upon the line of the defendant because of its negligence, and therefore the company is responsible for the full value of the beans, or $2900. The defendant insists that it acted within its legal right and duty in its attempt to salvage the beans in Atlanta, and is therefore entitled to recover the freight charges, and also the expense for the salvaging above the price received for the beans.

The complainant seeks by its assignment of error to show that the railroad negligently handled the beans after receiving them, causing the damage, and that the company is entitled to recover the full value.

The beans were loaded in Graham, Florida, in May, 1921. The weather was very hot. The car stood on the track two days, and the nine thousand pounds of ice in the car practically melted the first day. When the beans arrived in Gainesville, Fla., a short distance, they were then hot, nine thousand pounds of ice was put in the car and it was sent north. The car was re-iced a time or two before reaching Atlanta. At Jessup, Georgia, a station near the place where the beans were delivered to the Southern Railway Company, the car was opened to discover whether or not the car was on fire, steam and smoke issuing out of the car when the vents were opened to re-ice. The car reached Atlanta about 6 o'clock May 30, 1921, was re-iced, and Mr. Wooten, an inspector

for the Southern Railway examined the beans and, finding them in a damaged condition, turned them over to I. Jacobs to salvage.

We can find no evidence justifying the holding that the negligence of the Railway Company caused the condition of the beans as found in Atlanta. In fact we believe the proof shows that the bad condition of the beans was caused by the hot weather, with the inherent quality of the beans, and probably the fact that the car was not properly iced while on the siding when loaded. The Chancellor was correct in holding that the negligence, if any occurred, occurred on lines other than that of the defendant. And in the absence of negligence of the defendant, it is not liable for the full value of the car.

Assuming that the Railway Company may salvage perishable freight when in immediate danger of total loss or material injury, yet we are of opinion that in the instant case the act of the agent in appropriating the beans and turning them over to I. Jacobs was not the act of an ordinary, prudent man, and by reason of this act W. C. Henderson Company was caused to lose the value of the beans, or $600 plus the cost of salvage. Those courts recognizing the right of the company to salvage, base the right upon the theory that the carrier, in emergencies of this character, is a trustee for the shipper or owner, and, therefore, the trustee is authorized to act for the owner in a prudent way. But it is further recognized that it is likewise the duty of the carrier to notify the owner when at all practicable. In this case the Chancellor held that it was the duty of the Railway Company to give this notice, and it was practicable for them to have given the notice, and because of the failure to give the notice they were liable for the beans actually appropriated at the market value lost by Henderson. Our statute provides that freight reaching its destination within this State, the same being perishable freight, it is the duty of the railway company to first give notice to the owner, and, if declined by him, to sell. We do not know whether the Chancellor held this law to be applicable or found as a fact, under the circumstances, that it was the duty of the company to notify the shipper or owner. We do not think the law applicable to the instant shipment, which is an interstate shipment, and had not reached its destination within the bounds of this State. But under the facts of this case, as hereinafter detailed, we think the circumstances were such that it was the duty of the Railway Company, before appropriating the beans, to first notify the owner, and its failure to do so made it liable to the owner for the beans.

We believe the beans were in a better condition when they reached Atlanta and at the time they were turned over for salvage to I. Jacobs than they were when they passed through Jessup,

Georgia. This is indicated by the amount of ice used in the last twenty-four hours; the beans had been going through a natural heat for at least three days, and we believe it is shown by the proof that they were cooling, and if this is true their condition was improving. At the time the car was set out in Atlanta, it had been re-iced in Atlanta, and it was permitted to stay upon the siding until June 3rd from May 31st, during which time the beans were being removed from the car and sold by I. Jacobs. If this car had been permitted to go on to Knoxville, and had not been cut out, it would have arrived in the yards at 7:30 the next morning and been immediately turned over to the owner, who could have cared for his own property to a greater advantage. It is further shown that this particular kind of bean is a favorite upon the Knoxville market, but there is no sale for this variety in Atlanta, it being the Tennessee green pod variety. Under these conditions we think the railroad was not warranted in attempting to salvage these beans at a place where there is no market, when it could have been delivered to the owner at a place where there was a good market, at about the time when they were turned over to the salvager in Atlanta. We hold that this act was not the act of an ordinary prudent man dealing with his own property. It is shown that the agent, Wooten got into trouble, and has disappeared and could not be found as a witness. It is further argued that it is entirely probable Wooten wilfully condemned these beans and turned them over to I. Jacobs, acting in his interest. It is not necessary to determine the truth of this charge, but it illustrates that the right of condemnation and salvage may be abused, and before it is permitted by the courts it must clearly appear that the railway company acted as an ordinary prudent person would have acted, and in the way the owner himself would have acted under the circumtances, the court being the judge of how the owner would have acted.

For the reasons stated the assignments are overruled, the judgment of $600 representing the market value of the beans in Knoxville and the measure of Henderson's damage, is approved, and the decree of the lower court in all things affirmed. The costs of the appeal will be divided.

Snodgrass & Thompson concur.